IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2019

**STATE OF TENNESSEE v. RANDALL RAY WARD**

**Appeal from the Circuit Court for Madison County**
**No. 17-495   Donald H. Allen, Judge**

_____

**No. W2019-00345-CCA-R3-CD**
_____

A Madison County jury convicted the defendant, Randall Ray Ward, of two counts of promoting prostitution and one count of trafficking a person for a commercial sex act. Following a sentencing hearing, the trial court imposed an effective sentence of twenty years in confinement. On appeal, the defendant challenges the sufficiency of the evidence to support his convictions. He also argues the trial court erred in failing to merge the convictions regarding S.C.[1] and in failing to give the jury an instruction on accomplice testimony. After reviewing the record and considering the applicable law, we affirm the defendant's convictions but remand for merger of Counts three and four.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

George Morton Googe, District Public Defender; Gregory D. Gookin, Assistant Public Defender, for the appellant, Randall Ray Ward.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Facts and Procedural History***

_____

[1] It is the policy of this Court to refer to victims of sexual crimes by their initials. We intend no disrespect.

A Madison County grand jury indicted the defendant, Randall Ray Ward, for two counts of trafficking a person for a commercial sex act (Counts one and three) and two counts of promoting prostitution (Counts two and four). Following a jury trial, the defendant was convicted of one count of trafficking a person for a commercial sex act (Count three) and two counts of promoting prostitution (Counts two and four). The defendant was acquitted on Count one. At trial, the State presented the following facts for the jury's review.

T.G. testified she was a heroin addict for twenty years, and, to support her habit, she began engaging in acts of prostitution. Initially, she worked for a man named Chew. However, after a physical altercation, T.G. wanted more protection. The defendant approached her and promised to take care of her if she worked as a prostitute for him.

S.C. testified she met the defendant shortly after moving to Jackson. Like T.G., S.C. was addicted to heroin and moved to Jackson for easier access to drugs. While in Jackson, S.C.'s friend posted an ad for her on Backpage, a website containing advertisements for commercial sex services. Three days after her ad was posted, the defendant contacted S.C. and asked her to work for him. The defendant promised S.C. she would "never have to be dope sick" again. S.C. explained "dope sick[ness]" occurs when your body goes through heroin withdrawal.

To procure clients for T.G. and S.C., the defendant took "almost nude" photographs of them posing suggestively. T.G. and S.C., who went by the names "Barbie" and "Peaches," respectively, posed both alone and together. Although only the defendant took T.G.'s pictures, S.C. testified both the defendant and T.G. took pictures of her. The defendant then edited the pictures and used them in advertisements he posted on Backpage. The advertisements listed T.G. and S.C.'s location as Jackson and provided their cell phone numbers for potential clients to contact. Neither T.G. nor S.C. had the password to the defendant's Backpage account and had no control over the content of the advertisements or how long they stayed on the website.

While working for the defendant, T.G. acted as his "bottom." She explained that this meant she was the defendant's "right[-]hand man." As a "bottom," T.G. had access to better quality drugs, slept in her own room, and recruited women to work in the defendant's "stables." Additionally, if the defendant were not present, T.G. was in charge of the other women.

T.G. and S.C. testified the defendant was both physically and mentally abusive. The defendant kept all of the money they earned, and, if he believed they were not seeing enough clients, he would withhold drugs until they earned more money. T.G. estimated

she saw eight to fifteen clients each day and charged $200 per hour. Although the clients paid T.G. and S.C. directly, all of the money they earned went to the defendant immediately after the client left. In addition, the defendant controlled where T.G. and S.C. slept, when they ate, and what they wore. The defendant also kept both T.G. and S.C.'s identification in his wallet, only relinquishing them when they were needed to rent a hotel room. However, after the room was paid for, the defendant immediately regained control of the ID.

If T.G. refused to perform a sexual act with a client, the defendant would threaten her, asking why she was "going to make [him] kill [her]." The defendant also threatened to abandon T.G. with "just the shirt on [her] back." Although she wanted to leave, T.G.'s drug addiction acted like "invisible handcuffs," preventing her from escaping the defendant's grasp. However, shortly before the defendant's arrest, T.G. attempted to escape while the defendant was asleep. As she was running from the hotel, the defendant chased her, pulled her hair, and "threw [her] around."

S.C. testified she was not forced to see particular clients as long as she "made up the money . . . another way." When asked if she were able to come and go as she pleased, S.C. stated she "never really tested that theory" because she was afraid of what the defendant would do to her. Once, the defendant was physically violent with S.C. to "prove . . . he was in control." Another time, S.C. saw the defendant hit T.G., resulting in a "big knot on her head" and bruises.

On June 14, 2017, T.G., S.C., the defendant, and another woman travelled from Jackson to Memphis to meet clients. After checking into a hotel, S.C. and the other woman overdosed on heroin. Although S.C. recovered from her overdose, T.G. took the other woman to the hospital. Officers from the Bartlett Police Department arrived at the hospital to investigate the overdose, and T.G. was taken into custody. However, T.G. did not initially disclose her relationship with the defendant because she was only concerned with "getting that next lick of dope." Likewise, when initially questioned, S.C. did not reveal her connection with the defendant. However, after she was arrested in Madison County two weeks later, S.C. spoke to Special Agent Chris Carpenter with the Tennessee Bureau of Investigation and disclosed that she was working as a prostitute for the defendant.

On cross-examination, T.G. acknowledged having perks as a result of being the defendant's "bottom," including additional freedom and her own cell phone, and she agreed she never reached out to family or friends for help. T.G. also acknowledged she sometimes used physical violence or threats to control the other women when the defendant was not present. Although she was initially charged with the same offenses as the defendant, the charges were dropped after she agreed to cooperate with police.

On cross-examination, S.C. agreed she did not reveal that the defendant was physically violent until the second time she spoke with Special Agent Carpenter and acknowledged she was allowed to attend rehab shortly after giving the police her statement. S.C. also agreed she was allowed to get food without the defendant but testified T.G. was always with her if the defendant was not present.

Detective Mike Christian with the Bartlett Police Department responded to a report of an overdose at a local hospital on June 14, 2017. After speaking with T.G., Detective Christian obtained a search warrant for the defendant's hotel room and instructed fellow detectives to arrest the defendant. Detective Christian searched the defendant's hotel room, finding a number of cell phones, a laptop computer, and various documents. Following the defendant's arrest, Detective Christian seized the defendant's wallet and a Samsung Galaxy cellphone. In the defendant's wallet, Detective Christian discovered S.C.'s state-issued ID and a handwritten note which read "I, [S.G.], give my human rights up to my daddy, T-Bone, for the rest of forever as long as we continue showing our mutual respect forever." S.C. admitted writing the note but testified it was as a joke. She stated the note was a gift for the defendant because she wanted to do "something nice for him."

Lieutenant Jerry Springer with the Bartlett Police Department conducted an examination of the Samsung Galaxy cell phone found on the defendant at the time of his arrest. During the examination, Lieutenant Springer extracted videos, photographs, text messages, and phone logs. In particular, the phone contained scantily clad pictures of T.G. and S.C. with the names "Barbie" and "Peaches" superimposed on them. Lieutenant Springer also recovered several photographs of the defendant with T.G. and S.C..

The defendant declined to present evidence. Following deliberations, the jury found the defendant guilty of promoting prostitution with regard to his actions against T.G. (Count two) and trafficking a person for a commercial sex act and promoting prostitution with regard to his actions against S.C. (Counts three and four). The defendant was found not guilty of trafficking a person for a commercial sex act with regards to T.G. (Count one). Following a sentencing hearing, the trial court imposed an effective sentence of twenty years.

The defendant filed a timely motion for new trial in which he argued, in part, the evidence at trial was insufficient to support the jury's verdict and the trial court erred in refusing to give an accomplice jury instruction and in refusing to merge Counts three and four. The trial court denied the motion, and this timely appeal followed.

*Analysis*

- 4 -

On appeal, the defendant argues the evidence at trial is insufficient to support his convictions. The defendant also argues the trial court erred in refusing to merge his convictions for promoting prostitution and trafficking a person for a commercial sex act relating to S.C. and refusing to give a jury instruction on accomplice testimony. The State contends the evidence is sufficient to sustain the defendant's convictions and the trial court properly refused the accomplice instruction and merger.

## I.      Sufficiency

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

## A.      Trafficking a Person for a Commercial Sex Act

The jury convicted the defendant of trafficking a person for a commercial sex act with regards to his actions against S.C.. As charged in this case, trafficking a person for a commercial sex act occurs when a person "[k]nowingly subjects, attempts to subject, benefits from, or attempts to benefit from another person's provision of a commercial sex act" or "[r]ecruits, entices, harbors, transports, provides, purchases, or obtains by any other means, another person for the purpose of providing a commercial sex act." Tenn. Code Ann. § 39-13-309(a)(1)-(2). For the purposes of subsection (a)(2), other means may include:

(1) Causing or threatening to cause physical harm to the person;

(2) Physically restraining or threatening to physically restrain the person;

(3) Abusing or threatening to abuse the law or legal process;

(4) Knowingly destroying, concealing, removing, confiscating or possessing any actual or purported passport or other immigration document, or any other actual or purported government identification document, of the person;

(5) Using blackmail or using or threatening to cause financial harm for the purpose of exercising financial control over the person; or

(6) Facilitating or controlling a person's access to a controlled substance.

*Id.* § 39-13-309(3). A commercial sex act is "[a]ny sexually explicit conduct for which anything of value is directly or indirectly given, promised to or received by any person, which conduct is induced or obtained by coercion" or "[a]ny sexually explicit conduct that is performed or provided by any person, which conduct is induced or obtained by coercion." *Id.* § 39-13-301(4)(A)-(B). Coercion includes "[c]ausing or threatening to cause bodily harm to any person, physically restraining or confining any person or threatening to physically restrain or confine any person;" "[d]estroying, concealing, removing, confiscating, or possessing any actual or purported passport or other immigration document, or any other actual or purported government identification document, of any person;" or "providing a controlled substance . . . to a person." *Id.* § 39-13-301(3)(A), (C), (D).

The defendant contends the evidence is insufficient because the "only proof alleging [the defendant] trafficked S.C. came from the testimony of her and T.G.." The defendant asserts the introduction of hotel receipts and copies of Backpage advertisements does not establish the defendant "compelled or forced" S.C. to engage in

commercial sex acts. At most, the defendant concedes the State showed he assisted S.C. with her prostitution "activities."

Viewed in the light most favorable to the State, S.C. testified she began working for the defendant three days after her first posting on Backpage. The defendant and T.G. took suggestive photographs of S.C., and the defendant posted the pictures in an advertisement for sexual services on Backpage. While working for the defendant, S.C. was required to give the defendant all of the money she made working as a prostitute. Additionally, the defendant controlled where S.C. lived, what she ate, and what clothes she wore. The defendant also confiscated S.C.'s identification, only allowing her access to it when she rented hotel rooms for him. S.C.'s identification was in the defendant's possession at the time of his arrest. While with the defendant, S.C. was addicted to heroin, and, if the defendant believed she was not earning enough money, he withheld drugs until she saw more clients. S.C. also testified the defendant used physical violence to exert control over her. Based on this testimony, a rational jury could find the defendant guilty of trafficking a person for a commercial sex act beyond a reasonable doubt. The defendant is not entitled to relief on this issue.

**B.    Promoting Prostitution**

The jury also convicted the defendant of two counts of promoting prostitution. As charged in this case, promoting prostitution is defined as "[e]ncouraging, inducing, or otherwise purposely causing another to become a prostitute." Tenn. Code Ann. §§ 39-13-512(4)(A)(iii); -515(a)(1). Prostitution includes "engaging in, or offering to engage in, sexual activity as a business[.]" *Id.* § 39-13-512(6). The defendant argues he cannot be guilty of promoting prostitution because both S.C. and T.G. engaged in prostitution prior to meeting him.

The evidence, considered in the light most favorable to the State, showed the defendant, at different times, approached T.G. and S.C., offering to protect them and provide them with drugs if they worked for him as prostitutes. The defendant took suggestive photographs of S.C. and T.G., edited them, and posted them in advertisements for sexual services using his Backpage account. Although the prostitution took place in hotel rooms rented in either T.G. or S.C.'s name, the defendant provided cash to pay for the rooms and chose where they stayed. Furthermore, the money made by T.G. and S.C. while working as prostitutes was given directly to the defendant. Based on this evidence, a rational jury could find the defendant guilty of promoting prostitution beyond a reasonable doubt. The defendant is not entitled to relief on this issue.

**II.    Failure to Merge Convictions**

The defendant argues the trial court erred in failing to merge his convictions for trafficking a person for a commercial sex act and promoting prostitution regarding S.C.. Specifically, the defendant contends the prohibition against double jeopardy requires that the two convictions be merged. While the defendant concedes the two offenses have different elements, he states "the proof at trial essentially was that [the defendant] recruited [S.C.] [to] work for him as a prostitute."

Both the federal and state constitutions protect an accused from being "twice put in jeopardy of life or limb" for "the same offense." U.S. Const. Amend. V; Tenn. Const. art. 1, sec. 10. The Double Jeopardy Clause provides three distinct protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012). A claim that multiple convictions violate the protection against double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W. 3d 840, 846 (Tenn. 2009)).

The Tennessee Supreme Court has divided single prosecution, multiple punishment claims into two categories: (1) unit-of-prosecution claims, "when a defendant who has been convicted of multiple violations of the same statute asserts that the multiple convictions are for the same offense," and (2) multiple description claims, "when a defendant who has been convicted of multiple criminal offenses under different statutes alleges that the statutes punish the same offense." *Id.* (citing *Watkins*, 362 S.W.3d at 543-44). Here, the defendant is making a multiple description claim. To address a multiple description claim, we must apply the two-pronged test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

In a *Blockburger* analysis, our primary focus is whether the General Assembly expressed an intent to permit or preclude multiple punishments. If either intent has been expressed, no further analysis is required. When the legislative intent is unclear, however, we must apply the "same elements test" from *Blockburger*. Under this test, the first step is to determine whether the convictions arise from the same act or transaction. The second step is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy.

*Smith*, 436 S.W.3d at 767 (internal citations omitted).[2]

In the present case, the defendant's single objective was to benefit from S.C.'s continued work as a prostitute; thus his acts constituted a continuing course of conduct and arose out of the same act or transaction. Therefore, the first prong of the *Blockburger* test has been met, and we will focus our analysis on the second prong of the *Blockburger* analysis.

The defendant was convicted of both promoting prostitution and trafficking a person for a commercial act in regards to his actions against S.C.. As charged in Count four, promoting prostitution is defined as "[e]ncouraging, inducing, or otherwise purposely causing another to become a prostitute." Tenn. Code Ann. § 39-13-512(4)(A)(iii). Prostitution is "engaging in, or offering to engage in, sexual activity as a business[.]" *Id.* §39-13-512(6). As charged in Count three, trafficking a person for a commercial sex act occurs when a person "[k]nowingly subjects, attempts to subject, benefits from, or attempts to benefit from another person's provision of a commercial act" or "[r]ecruits, entices, harbors, transports, provides, purchases, or obtains by any other means, another person for the purpose of providing a commercial sex act." *Id.* §39-13-309(a)(1)-(2). The term "by any means" may include:

(1) Causing or threatening to cause physical harm to the person;

(2) Physically restraining or threatening to physically restrain the person;

(3) Abusing or threatening to abuse the law or legal process;

(4) Knowingly destroying, concealing, removing, confiscating or possessing any actual or purported passport or other immigration document, or any other actual or purported government identification document, of the person;

---

[2] Although we acknowledge the State's argument that the legislature, by placing the offenses in separate parts of Chapter 13, implied the defendant's convictions should be punished separately, we believe the legislature's intent is ultimately unclear, as neither statute references the other and the legislative history is silent as to whether separate punishments were intended or even considered. We note legislatures in other jurisdictions have expressed their intent to distinguish between promoting prostitution and sex trafficking in a number of ways. *See, e.g.*, Tex. Penal Code Ann. § 20A.02(c) (articulating their intent that a defendant may be punished for both sex trafficking and promoting prostitution by adding the following sentence to their trafficking statute: "If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections"); Me. Rev. Stat. Ann. Tit. 17-A, § 852-53 (promoting prostitution is not an offense rather "sex trafficking" is defined as a person who "knowingly promotes prostitution" and "aggravated sex trafficking" as promoting prostitution by compulsion).

(5) Using blackmail or using or threatening to cause financial harm for the purpose of exercising financial control over the person; or

(6) Facilitating or controlling a person's access to a controlled substance.

*Id.* § 39-13-309(3). A commercial sex act is "[a]ny sexually explicit conduct for which anything of value is directly or indirectly given, promised to or received by any person, which conduct is induced or obtained by coercion" or "[a]ny sexually explicit conduct that is performed or provided by any person, which conduct is induced or obtained by coercion." *Id.* § 39-13-301(4)(A)-(B). Coercion includes "[c]ausing or threatening to cause bodily harm to any person, physically restraining or confining any person or threatening to physically restrain or confine any person;" "[d]estroying, concealing, removing, confiscating, or possessing any actual or purported passport or other immigration document, or any other actual or purported government identification document, of any person;" or "providing a controlled substance . . . to a person." *Id.* § 39-13-301(3)(A), (C), (D).

Here, both promoting prostitution and trafficking a person for a commercial sex act require the defendant to cause the victim to perform sexual activities in exchange for something of value. Although the statute for trafficking a person for a commercial sex act contains the additional requirement that the victim be coerced, the promoting prostitution statute does not contain an essential element that the trafficking statute does not. Additionally, because the *Blockburger* test must be applied with an objective or abstract view, we conclude any additional differences in the wording of the two statutes do not constitute separate elements. *See State v. Maurice Gray*, No. W2017-01897-CCA-R3-CD, 2018 WL 4382093, at *10 (Tenn. Crim. App. Sept. 14, 2018) (noting the *Blockburger* test was applied with an objective or abstract view by *Watkins* and its progeny), *no perm. app. filed*. Therefore, because only one of the offenses has an element the other does not, the defendant's convictions in Counts three and four must merge. On remand, the trial court should merge the Class E felony conviction for promoting prostitution into the Class B felony conviction for trafficking a person for a commercial sex act. *See State v. Banes*, 874 S.W.2d 73, 81 (Tenn. Crim. App. 1993).

The defendant also argues his convictions in Counts three and four should merge because promoting prostitution is a lesser-included offense of trafficking a person for a commercial sex act. The State does not address this argument in its brief. An offense is a lesser-included offense of a charged offense if "[a]ll of its statutory elements are included within the statutory elements of the offense charged." Tenn. Code Ann. § 40-18-

- 10 -

110(f)(1).[3]  As discussed above, all of the statutory elements of promoting prostitution are included within the statutory elements of trafficking a person for a commercial sex act.  Thus, the trial court erred in determining promoting prostitution was not a lesser-included offense of trafficking a person for a commercial sex act, and the defendant's convictions should merge.

## III.    Jury Instruction

The defendant argues the trial court erred in refusing to give an accomplice jury instruction regarding T.G.'s testimony.  Specifically, the defendant contends T.G.'s testimony indicated she recruited women to work for the defendant, took pictures of S.C. for the defendant's Backpage advertisements, engaged in threats and violence to control the other women when the defendant was not present, and was initially charged with the same offenses as the defendant.  The defendant argues this testimony indicates T.G. was an accomplice in his offenses regarding S.C..  The State contends the trial court properly declined to give the accomplice jury instruction.

A defendant has a right to a correct and complete jury charge.  *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000).  This right is constitutional in nature.  *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994).  The trial court must present the propositions of law governing the case plainly to the jury, in such a manner as to enable them to comprehend the principles involved.  *State v. Williamson*, 919 S.W.2d 69, 80 (Tenn. Crim. App. 1995).  "Nothing short of this will 'satisfy the demands of justice' or the defendant's right to a jury trial."  *Id.* (quoting *Crawford v. State*, 44 Tenn. 190, 195 (1867)).

It is well-established that "a conviction may not be based upon the uncorroborated testimony of an accomplice."  *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (citing *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994)).  This Court has defined the term "accomplice" to mean "one who knowingly, voluntarily, and with common intent with the principal unites in the commission of a crime." *State v. Allen*, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997).  This means that the person must do more than have a guilty knowledge, be morally delinquent, or participate in other offenses with the principal actor.  *State v. Jackson*, 52 S.W.3d 661, 666 (Tenn. Crim. App. 2001).  The test for whether a witness qualifies as an accomplice is "whether the alleged accomplice could be indicted for the same offense charged against the defendant." *Allen*, 976 S.W.2d at 666.

---

[3] Tennessee Code Annotated section (f) codified parts (a) and (c) of the lesser-included offense test promulgated by the Tennessee Supreme Court in *State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999). *See State v. Howard*, 504 S.W.3d 260 (Tenn. 2016).

The issue of whether the court or the jury determines a witness's status as an accomplice has been previously determined by this Court:

> The question of who determines whether a witness is an accomplice depends upon the evidence introduced during the course of a trial. When the undisputed evidence clearly establishes the witness is an accomplice as a matter of law, the trial court, not the jury must decide the issue. On the other hand, if the evidence adduced at trial is unclear, conflicts, or is subject to different inferences, the jury, as the trier of fact, is to decide if the witness was an accomplice. If the jury finds the witness was an accomplice, the jury must decide whether the evidence adduced was sufficient to corroborate the witness's testimony.

*State v. Griffis*, 964 S.W.2d 577, 588 (Tenn. Crim. App. 1997) (footnote omitted).

In the present case, the trial court correctly noted there was no testimony from S.C. indicating she engaged in a commercial sex act or any type of prostitution at the direction of T.G.. However, T.G. testified she worked as the defendant's "bottom" or "right[-]hand man." As the defendant's "bottom," T.G.'s responsibilities included recruiting women to work as prostitutes for the defendant and supervising the other women when the defendant was not present. To control the women, T.G. sometimes used threats and physical violence. S.C. testified T.G. took pictures of her for the defendant's Backpage advertisements. Additionally, prior to cooperating with the police, T.G. was charged with the same crimes as the defendant.

We agree with the defendant that the record contains evidence from which the jury could have inferred T.G. was an accomplice. However, the trial court failed to present this factual dispute to the jury in the form of a jury instruction. Nevertheless, when a trial court fails to properly instruct the jury concerning accomplice testimony, such an error is subject to harmless error analysis. *See State v. Ballinger*, 93 S.W.3d 881, 888 (Tenn. Crim. App. 2000). Such an error is harmless when "the record contains sufficient corroboration to [the accomplice's] testimony." *Id.*

Here, even if the jury found T.G. to be an accomplice, the State presented sufficient evidence at trial to corroborate her testimony. "[C]orroborating evidence is sufficient if it connects the accused with the crime in question." *Griffis*, 964 S.W.2d at 589. S.C. testified the defendant approached her about working for him as a prostitute. The defendant took semi-nude, suggestive pictures of S.C. and posted them in an advertisement for sexual services using his Backpage account. S.C. also testified the that defendant maintained possession of her identification, restricted her supply to drugs, used threats and physical violence to exert control over her, and confiscated any money she

made while working as a prostitute.  This testimony constitutes more than sufficient corroboration of T.G.'s testimony.  Furthermore, T.G. was vigorously cross-examined at trial about her relationship with the defendant and participation in the offenses regarding S.C..  Accordingly, any failure of the trial court to properly instruct the jury concerning T.G.'s status as an accomplice or the need for her testimony to be corroborated was harmless.  The defendant is not entitled to relief on this issue.

### *Conclusion*

For the aforementioned reasons, the defendant's convictions are affirmed. However, we remand this case for merger of Count four, promoting prostitution, into Count three, trafficking a person for a commercial sex act, to ensure the defendant is not subjected to double jeopardy.

_____
J. ROSS DYER, JUDGE